### GRANNIS v. STEVENS et al.

(Supreme Court, Appellate Division, First Department. July 10, 1913.)

1. BILLS AND NOTES (§ 519*)—ACTIONS—EVIDENCE.
   In an action upon a note, evidence *held* sufficient to show that it was not intended by the parties that defendants should be bound thereby, or be made to pay.
   [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 1802; Dec. Dig. § 519.*]

2. BILLS AND NOTES (§ 452*)—DEFENSES.
   In an action upon a note, the maker may show, as against the payee, that he received no consideration, and that it was understood by the payee that he should not be liable.
   [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1303, 1352–1364, 1367–1376; Dec. Dig. § 452.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. USURY (§ 67*)—ACTIONS—DEFENSES.
    In an action on a note given nominally by defendants, but in reality for
money loaned to their brother, who agreed to pay a usurious interest,
usury will invalidate the note given.
    [Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 140, 141; Dec.
Dig. § 67.*]
    McLaughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by Arthur E. Grannis against John Stevens and another.
From a judgment for defendants, and an order denying his motion
for new trial, plaintiff appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-
LIN, CLARKE, and SCOTT, JJ.

Frank L. Crocker, of New York City, for appellant.
Henry G. Gray, of New York City, for respondents.

LAUGHLIN, J. This is an action to recover on a promissory note
made by the defendants on the 14th day of April, 1910, whereby they
promised to pay to the order of the plaintiff one year from date the
sum of $60,000 at the office of Stevens & Co., New York City, with
interest at 6 per centum per annum. The defendants pleaded, among
other things, that the note was given solely for the accommodation
of the plaintiff and without consideration; that it was usurious; that
it was fraudulently diverted from the purpose for which it was intend-
ed, and that it was understood at the time it was signed that it was a
mere matter of form, and they were not to become liable thereon.

[1] The plaintiff had been a member of the New York Stock Ex-
change, and had been suspended. About the end of May, 1909, before
it had been determined whether or not he would obtain reinstatement
on the Stock Exchange, he executed and delivered to one W. L. Stev-
ens, a brother of the defendants, a memorandum agreement acknowl-
edging indebtedness to him of $10,000 for money loaned on May 15,
1909, and reciting that, if the plaintiff could obtain reinstatement with-
in two months, it was their desire to enter into partnership, and, if he
could not obtain such reinstatement, he would sell his membership in
the Stock Exchange and loan the proceeds to Stevens, to be employed
"in his stock exchange business on terms to be later agreed upon
which will return Mr. Grannis not less than $10,000 a year." The
plaintiff did not succeed in obtaining reinstatement to membership in
the Stock Exchange.

According to the testimony of W. L. Stevens, the plaintiff, on sell-
ing his seat on the Stock Exchange, returned the $10,000 he had bor-
rowed, and said that he would not put the balance into Stevens' firm,
which was then composed of one Henry Coolidge and himself, while
Coolidge was a member thereof, and they succeeded in finding one
Henning, who was a member of the Stock Exchange, to join the firm
in place of Coolidge. The organization of the new firm was evidently
contemplated at the time of the execution of the note, for the evidence
shows that it was formed the next day, and was composed of W. L.

Stevens and Henning. The defendants were in the employ of their brother's firm at salaries of $15 per week, and had no interest in the firm.

The uncontroverted evidence is that they had no negotiations with the plaintiff with respect to the making of this note, and that the loan was not made to them, but to their brother, the check therefor for $60,000 having been drawn the day before and delivered to their brother's attorney, who, after the execution of the note, drew his check to their brother for the amount. The preponderance of the evidence also shows that after this loan had been negotiated between the plaintiff and defendants' brother on an understanding precisely the same as that contemplated by said memorandum agreement, namely, that plaintiff was not to become a member of the firm, but was to receive $10,000 per annum for the use of his money, the defendants were summoned to the main office of their brother's firm, and were requested to sign this note, which had already been prepared, and to take their brother's note for a like amount for the purpose of securing their brother's firm against adverse action by the Stock Exchange which it · was anticipated would likely be taken under the rules of the Stock Exchange if it became known that the plaintiff, a suspended member of the Exchange, had loaned the money to the defendants' brother's firm, one member of which was a member of the Exchange, and that in the presence of the plaintiff it was stated to them by their brother or his attorney that their signing the note was a mere matter of form, and that they would not incur any liability thereby. The evidence further shows that the note was retained in the possession of the attorney for the defendants' brother for between five and eight months, and was not delivered to the plaintiff until the defendants' brother failed to make payments in accordance with the contract between him and the plaintiff, and that ten days after the money was loaned the plaintiff and the defendants' brother made a formal agreement to the effect that the excess of the $10,000, which plaintiff was to receive per annum for the use of his money according to the agreement between him and W. L. Stevens at the time the note was made, over and above the legal rate of interest, viz., $533 per month, should be deemed salary; but the evidence shows that the plaintiff never performed any services for the defendants' brother's firm, and that it was not intended that he should, and although he was permitted to draw on the firm, and received $10,000 per annum or more, his drafts were charged to the defendants' brother's account.

[2, 3] At the close of the evidence both parties moved for a direction of a verdict, and thus the facts were submitted to the court. It is perfectly plain, I think, from the evidence that this loan was not made to the defendants, but to their brother, and that the transaction took the form it did merely to prevent suspension of the defendants' brother's firm by the New York Stock Exchange. The delivery of the note as a valid obligation of the defendants was neither authorized nor contemplated. The case fairly falls within the rule that it may be shown by the maker of a promissory note, who has received no consideration therefor, as against the payee, that it was understood that

he was not to be liable thereon. Higgins v. Ridgway, 153 N. Y. 130, 47 N. E. 32. Moreover, if the defendants had authorized the delivery of the note and gave it for the purpose of enabling their brother to obtain the loan, it would be tainted with the usurious contract made between the plaintiff and their brother upon which it was based.

It follows that the judgment and order should be affirmed, with costs.

INGRAHAM, P. J., and CLARKE and SCOTT, JJ., concur.

McLAUGHLIN, J. I am unable to concur in the opinion of Mr. Justice LAUGHLIN for the following reasons:

First. There was sufficient consideration for the note. It was given for $60,000 actually loaned by the plaintiff to W. L. Stevens, a brother of the defendants. Prior to the time the loan was made, W. L. Stevens and the plaintiff were members of the New York Stock Exchange, but the latter had been suspended. His efforts to be reinstated having failed, he sold his seat, and out of the moneys received the loan was made. W. L. Stevens for certain reasons desired to conceal from the Exchange the fact that he was the borrower, and he thereupon, in pursuance of an arrangement with the defendants, gave to them his note for $60,000, and they gave to the plaintiff the note in suit. The defendants still hold the note of W. L. Stevens. The transaction was thoroughly understood by the defendants. One of them testified:

"Q. But you knew the note had to be signed by you before your brother Lewis would get the $60,000? A. I did.

"Q. You knew that the $60,000 was necessary to save his firm? A. Yes. He did get the $60,000, and he gave us his note. The firm has failed. Our note has not been paid."

The case is distinguishable from Higgins v. Ridgway, 153 N. Y. 130, 47 N. E. 32, cited in the prevailing opinion. There the defendant made a note to his own order, indorsed it, and delivered it to a bank solely for its accommodation. It was held that a recovery could not be had since the note was made, without consideration, for the accommodation of the party who was trying to recover upon it.

The testimony of the defendants to the effect that they were informed by their brother that the giving of the note was a matter of form, and they would not be called upon to pay it, does not prevent a recovery. Such testimony ought not to have been received. There are numerous authorities to the effect that parol evidence of an oral agreement made at the time of the making of a promissory note cannot be received for the purpose of varying, qualifying, or contradicting its terms. Jamestown Business College Association v. Allen, 172 N. Y. 291, 64 N. E. 952, 92 Am. St. Rep. 740, and cases there cited.

There is a line of authorities holding that parol evidence may be received to show a conditional delivery, and that the note is not to take effect until the happening of some condition precedent. This was not a conditional delivery, but an absolute one. The contract

became complete when the note was delivered in exchange for the money loaned. The note was given for a proper consideration. The defendants by it agreed to pay a given amount at a specified time. If an agreement had been made that the note should not be collected or that its payment should not be enforced, it would have amounted to nothing, because an action could notwithstanding have been maintained upon it when the same fell due. Mead v. National Bank, 89 Hun, 102, 34 N. Y. Supp. 1054.

Second. The evidence, as I read the record, does not establish that the loan was usurious. The note upon its face bears 6 per cent. interest. It is true that about a year before the note was made the plaintiff signed a written statement in which he acknowledged that he was indebted to W. L. Stevens in the sum of $10,000; that he would endeavor to get reinstated on the Stock Exchange, and, if he succeeded within two months in doing so, he would enter into partnership with Stevens, and, if he failed within that time, he would sell his seat and lend the proceeds to Stevens, to be employed in his stock exchange business "on terms to be later agreed upon, which will return Mr. Grannis not less than $10,000 a year." This agreement was not acted upon, but about two weeks after the loan was made another agreement was entered into by which the plaintiff was employed by Stevens' firm at a salary of $533 a month or more, depending upon the amount of business which he brought in, 'and he did render some service. The only evidence that the transaction was usurious is the statement contained in the agreement made in 1909 that the loan, if made, should yield Mr. Grannis not less than $10,-000 a year, and that the interest on the note and the salary agreed to be paid would make that amount. This, I think, is insufficient to justify a finding that the loan was usurious.

The judgment and order appealed from therefore should be reversed, and judgment directed for the plaintiff.