## COOPER v. ROSS.

1. MECHANICS' LIENS—USURY—AMOUNT INCLUDED AS BONUS BY FINANCING CORPORATION DISALLOWED.

In a suit to foreclose a mechanic's lien on a theatre building, an amount claimed by the finance corporation furnishing the money to the contractor, who took a deed of the land and agreed to finance the construction of the building but failed to do so, which included a bonus and money advanced for the personal use of the contractor, and was obviously an attempt to evade the usury statute (2 Comp. Laws 1915, §§ 5997, 5998), was properly disallowed.[1]

2. SAME—NOTICE.

The finding of the court below that the finance corporation had notice of the contractual relations between the contractor and the theatre company, and that the latter ex-

[1]Mechanics' Liens, 27 Cyc. p. 48.

On the question as to whether commissions charged by lender's agent is usury, see notes in 19 L. R. A. (N. S.) 391; 46 L. R. A. (N. S.) 1157.

Commissions to agent of lender, as rendering loan usurious, see note in 21 A. L. R. 841.

pected to take back the title to the property and assume the payment of any valid mortgage thereon as part of the purchase price, *held*, justified by the record.[2]

3. SAME—DEFENSE OF USURY.

Under the record, *held*, that the theatre company had as good right to make the defense of usury as had the contractor.[3]

4. EQUITY.

One who seeks equity must do equity.[4]

5. MECHANICS' LIENS—INTEREST ON ADVANCEMENTS.

Interest was properly allowed to the finance company from the date of the advancements, rather than from the date of the decree, since the theatre company had had the benefit thereof from the date of the advancements.[5]

6. SAME — FILING OF TWO LIENS NOT FATAL TO VALID CLAIM WHERE MISTAKE EXPLAINED.

Where the filing of two liens by a materialman covering the same material was fully explained as being occasioned by a mistake in the first one, the court below properly allowed the claim represented by material furnished which was not paid for.[6]

7. SAME—IMMATERIAL OBJECTIONS.

Where the roof of the building was on before the claim for the material therefor was allowed by the court below, an objection that it was not to be paid for until the roof was on is without merit, although it was not on at the time the lien was filed, due to the failure of the contractor to complete the building.[7]

Appeal from Wayne; Hunt (Ormond F.), J. Submitted June 3, 1925. (Docket No. 21.) Decided October 27, 1925.

Bill by Arnold Cooper, doing business as A. & W. Cooper Company, against Charles M. Ross, Nathan Zacks and Michael Lerner, copartners as Zacks & Lerner, Meyer Den Braven and Leo H. Belisle, copartners as M. Den Braven & Company, the Cinderella

[2]Usury, 39 Cyc. p. 1086; [3]Id., 39 Cyc. p. 1067; [4]Equity, 21 C. J. § 151; [5]Mechanics' Liens, 27 Cyc. p. 214; [6]Id., 27 Cyc. p. 203; [7]Id., 27 Cyc. p. 151.

Theatre Company, the Federal Discount Corporation, and others to foreclose a mechanic's lien. From the decree rendered, defendants theatre company and discount corporation appeal. Modified and affirmed.

*Arthur Schueler,* for plaintiff.

*Anthony Maiullo,* for defendants Zacks & Lerner.

*Frank Day Smith,* for defendant M. Den Braven & Co.

*Routier, Nichols & Fildew,* for defendant Cinderella Theatre Co.

*MacKay, Wiley, Streeter & Tucker,* for defendant Federal Discount Corporation.

MOORE, J.    Arnold Cooper was engaged in selling building materials under the name of A. & W. Cooper Company.    The bill of complaint is filed to establish a lien for materials that went into the construction of the Cinderella Theatre.    Charles M. Ross had the contract for the construction of the building from a certain date, at which time some construction work had been done.    Waive S. Ross is the wife of Charles M. Ross.    The other defendants who are appellees were joined because material furnished by them, or work done by them entered into the construction of the building.    The Cinderella Theatre Company was having the building erected for its own use.    The Federal Discount Corporation furnished money to Charles M. Ross to finance him in his work of construction.    He gave to it three mortgages.    The case was tried in open court; the trial judge stating that the trial, including the arguments, took upwards of 30 days.    The judge found that Mr. Ross breached his contract and misappropriated funds, and that the damage because of his wrongful acts excluded any set-off of claim he had against the theatre company,

or against its premises, and made a decree accordingly. Mr. Ross has not appealed.     The court gave a lien in the sum of $6,780 to the Lewis-Hall Iron Works; for $323.35 to the United Fuel & Supply Company; for $3,900 to Den Braven and Belisle.     Since the case came into this court a stipulation has been filed that this amount may be reduced to $3,750, and as modified may be affirmed.     The decree also gives a lien for $16,333.17 to Arnold Cooper; for $1,850.40 to Zacks and Lerner.     Reference will be made later to the claim of the Federal Discount Corporation.

At this juncture it may be well to give a brief history of the salient features of the case.     The theatre company had become the owners of contracts for the purchase of land at the corner of Jefferson avenue and Coplin avenue in the city of Detroit.     The company commenced to build thereon a theatre building.     After expending some money it became financially embarrassed and was unable to go on with the work.     At this time the situation at the premises is stated by the theatre company to be as follows:

"I also stated that we had put in the excavating, that the mason work was up to grade, the proscenium steel arch was in position, other steel was on the premises, and also brick and stone was on the premises, that is for the level up to the grade and sash up to the next floor."

There had at this time been paid upon the land contracts, and expended upon the building by the theatre company, $75,549.     Mr. Ross had represented that he could finance the enterprise, and to enable him to do so it was arranged that the grantors in the land contracts should make deeds directly to him and he would give a contract back to the theatre company. This was done and in one of the deeds appears the following:

"Ensealing and delivery of these presents they are well seized of the above granted premises in fee

simple; that they are free from all incumbrances what-·
ever, except those, if any, which may have arisen
through the acts or omissions of the Cinderella Theatre
Company, Inc., or its successors since July 21, 1921."

And in the other deed is the following:

"That they are free from all incumbrances what-
ever except such as may have been placed on said land
by the act of the parties of the second part, their
representatives, agents, or attorneys, and such as have
accrued or become a lien since August 1, 1921."

It was agreed that Mr. Ross might place a mort-
gage or mortgages on the property to the amount of
$150,000, and there were provisions made for the
assumption of these mortgages by the theatre com-
pany when the property was deeded by Mr. Ross to
the theatre company. We do not deem it necessary
to state more in detail about this contract.

Mr. Ross entered upon the work and placed three
mortgages with the discount company. We quote
from the decree as to these mortgages:

"That Charles M. Ross and Waive S. Ross, his wife,
executed to the Federal Discount Corporation, a Dela-
ware corporation, defendant and cross-plaintiff herein,
three mortgages and the principal amounts of the
mortgages together with the actual credit given by
reason of said mortgages are as follows:

| Dated. | Recorded. | Liber | Page. | Amount. | Actual Credit Given. |
|---|---|---|---|---|---|
| May 5, 1922 | May 10, 1922 | 1132 | 324 | $75,000 | $59,185.00 |
| May 12, 1922 | June 30, 1922 | 1132 | 587 | 58,375 | 50,444.82 |
| Aug. 26, 1922 | Sept. 11, 1922 | 1102 | 103 | 5,500 | |

* * * "That the Federal Discount Corporation
had notice and knowledge of the right, title and in-
terest of the Cinderella Theatre Company, Inc., in the
premises prior to the taking or making of any mort-
gage loan by it (the Federal Discount Corporation) to
Charles M. Ross, and that the Federal Discount Cor-
poration was fully advised of the contractual obliga-
tions existing between the Cinderella Theatre Com-

pany, Inc., and Charles M. Ross prior to the making of any mortgage loans or advances on the mortgage loans. * * *

"That the court finds that the so-called bonus for service to be rendered as claimed by the Federal Discount Corporation in the amount of $23,695.08 was founded upon the consideration of services to be performed and formed the consideration from which the so-called bonus was paid or to be paid; that, in the testimony of this case there was such a failure or lack of consideration within the meaning of the law that this item cannot be allowed and must be deducted from the claimed mortgage lien of the Federal Discount Corporation. * * *

"The third mortgage, so-called, dated August 26, 1922, recorded September 11, 1922, liber 1102, page 103, for $5,500, the court finds and determines that under the weight of the testimony, this mortgage was given by Charles M. Ross and Waive S. Ross, his wife, to the Federal Discount Corporation for the purpose of procuring a personal loan of money by Ross and the proceeds of the mortgage were not used for the payment of labor or material bills for the erection and construction of the building on the premises, and this item of $5,500 must be eliminated from any mortgage lien of Federal Discount Corporation.

"That the valid charges after deducting the various items for which the Federal Discount Corporation is entitled to a mortgage lien, is $96,048.07, together with interest at 5% from the date of the disbursement of various items, as shown by its books of accounts and checks, which item has been computed from the day of its advance to the first day of January, 1924, and is $6,909.50, making a total mortgage lien, which should be decreed to the Federal Discount Corporation, of $102,957.57."

The Federal Discount Corporation claims the so-called bonus was for services and proper discount and interest charges, and should have been allowed. It makes a further claim that will be referred to later.

It is the claim of the theatre company that the amount decreed to the discount company is too large by about $8,000, and that interest should not com-

mence from the date of the advancements but should commence from the date of the decree.

The discount company claims, and we quote from the brief:

"(1) The contract between the Federal Discount Corporation and Charles M. Ross is founded upon a good and valid consideration, the services have been performed, and the payment of the fee of $23,695.08 is not usurious.

"The item of $23,695.08 paid by Mr. Ross from the proceeds of these mortgages to the Federal Discount Corporation is a financing charge for services rendered in connection with the loan, over and above the regular interest rate.  *  *  *

"(2) If the payment of the said $23,695.08 were usurious no one but the defendant Ross can avail himself of this defense, nor could any one but Ross raise the question of a failure of consideration.

"On January 28th, Cinderella Theatre Company made a contract with Ross which provided in its terms that this real estate should be conveyed to Ross as the legal owner.   On May 9th, pursuant to this agreement, the land was so conveyed to Ross as the legal owner, and in the presence of and with the consent of the Cinderella Theatre Company.   Under this state of facts, after the title had been once conveyed to Charles M. Ross by agreement with or consent of the Cinderella Theatre Company, it then and there had no interest, legal or equitable, in this property, and Charles M. Ross was, then and there, not a trustee of this title, but was the legal owner of it and had a right to use it and deal with it as he would use his own, and the Cinderella Theatre Company could not limit Charles M. Ross in the exercise of the prerogatives of legal ownership of this land, no matter what it had provided for in its building contract of January 28th. Such a contract might give it an action against Charles M. Ross for breach of the contract, but would not give it any action which would affect the title to the land nor upon any theory that Ross was holding the title as trustee for it or for its beneficial interest. This doctrine of resulting trust was abolished by statute in the early history of this State:

" 'When a grant for a valuable consideration shall be made to one person, and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made; but the title shall rest in the person named as the alienee in such conveyance.' * * * 3 Comp. Laws 1915, § 11571, and cases cited under this statute.

"It therefore follows that Ross had a right to deal with this property as the legal owner of it and had a right to make contract respecting it, and that the Cinderella Theatre Company was a stranger, both legally and equitably, to such contracts as were made by Ross in connection with the property, and it cannot be held to say, nor to contend, that it was either legally or equitably interested in any contracts which Ross made by virtue of his legal ownership in the land. Therefore when Ross made his financing contract with the Federal Discount Corporation under date of May 5, 1922, which provided for two mortgages upon this piece of property, and provided for the financing charge between himself and the Federal Discount Corporation, he made a contract independent and separate from the Cinderella Theatre Company and one in which it had no interest, legally or equitably. The only rights it could possibly have under the circumstances would be the right of action against Ross on his contract. Under this state of facts the Cinderella Theatre Company was not legally or equitably interested in the financing contract between Ross and the Federal Discount Corporation. It was a stranger to it at that time and must remain a stranger to it.

"It therefore follows that if this contract were to be treated as usurious, no one could raise that defense except Ross, himself, and he has not done so. The defense is a purely personal one and cannot be pleaded by strangers to the contract."

1. We will take up the first of these contentions: It is claimed the discount company rendered valuable service in the way of supervision, and that the services so rendered was a valid consideration. This supervision did not prevent its payment of a plumbing bill of $10,000 ·to a concern that did not do a day's work

or furnish a dollar's worth of material for the theatre company. Nor did it prevent the payment of an item of $3,000 for stone, none of which went into the building. This supervision was not such as to prevent the placing of a lien by Mr. Ross of $5,500 which was created for the exclusive benefit of Mr. Ross, and did not benefit the theatre company in the least. The services rendered could not by any stretch of the imagination be regarded as worth the thousands of dollars withheld. The mortgages ran but for six months and drew 7 per cent. interest. A careful reading of this voluminous record satisfies us that the charge is an attempt to evade the usury statute (2 Comp. Laws 1915, §§ 5997, 5998, and cases cited in the notes thereto); and that it ought not to stand.

2. Can the theatre company raise the question of usury? Before the discount company made its loan one of its officers visited the premises. The theatre company was then in possession. The amount of work that had then been done has already been described. There was a sign on the premises stating that the theatre company was erecting the building. We quote:

"We came into possession of the property on or about May 14, 1921, and we have been in possession of it ever since. The office on the property had a sign on 'Cinderella Theatre Office,' and the office was located at the northeast corner of the property between the curb and the west wall of the building, and there was a sign upon the property which read something to this effect: 'On this site will be erected the Cinderella Theatre Building, seating 2,000 people, stores and offices. For information apply to the Cinderella Theatre Company, Inc., 1216 Book Building,' giving the telephone number and a list of the officers' names. Inside the office we had a desk, chairs, stationery and we used the office for the purpose of conducting all our business in connection with the building of the theatre there on the premises."

Mr. Ross testified that he showed his contract with the theatre company to the president of the discount company before the loan was made. We quote some of the testimony of the president of the discount company:

"*Q.* This loan was to be of an approximate amount, how much was it to be for?

"*A.* It was at different times for different amounts; it was a construction loan.

"*Q.* It was a construction loan, the proceeds of the loan to be used for what purpose?

"*A.* Building of the building and paying any expense connected therewith."

It is impossible to read this record without reaching the conclusion that the discount company knew the relations between Mr. Ross and the theatre company. It knew that the theatre company expected to take the property back and to assume the payment of any valid mortgages that had been placed by Mr. Ross, and that this assumption of the mortgages would be part of the purchase price. Under the record as made the theatre company had as good a right to make the defense of usury as Mr. Ross would have had. *Cobe* v. *Summers,* 143 Mich. 117; *Dalton* v. *Weber,* 203 Mich. 455; *Umphrey* v. *Auger,* 208 Mich. 276.

As to the claim of the theatre company that interest should commence at the date of the decree instead of at the date of the advancements: In considering this claim it must be remembered that an appeal is made to the equity court to relieve the theatre company from the payment of the face value of the mortgages. The trial judge allowed nothing to the discount company except for money advanced, which found its way into the building through material furnished or labor done. It is a familiar doctrine that one who seeks equity must do equity. The theatre company has the benefit of the advancements and should pay legal interest from the date of these

advancements.    See *Vandervelde* v. *Wilson*, 176 Mich. at p. 191.

As to the claim that the mortgage should be further reduced, we think it is not shown that the discount company should be held for these items.

The theatre company objects to the allowance made to Mr. Cooper and to Zacks and Lerner.

We quote from the brief:

"Cooper filed two claims of lien with the register of deeds for Wayne county, the first on October 24, 1922, for $18,147.97, which lien is on R. pp. 607, 608.    This lien was released on November 10, 1923, by the defendant theatre company filing an affidavit pursuant to the statute and procuring from the Wayne county clerk a mechanic's lien certificate releasing lien No. 25132.  On November 8, 1922, the plaintiff filed its second claim of lien for $18,147.97, without releasing the first lien filed, thus incumbering the defendant theatre company's property in the amount of $36,925.94.    Upon the hearing and trial of the cause and on December 13, 1923, the court over objection of the defendant theatre company, permitted the plaintiff to amend its bill of complaint and attach thereto the lien which was filed on November 8, 1922, and foreclose that lien instead of the lien filed October 24, 1922, and foreclose the lien filed November 8, 1922.

"The court by decree decreed a lien to the plaintiff of $16,333.17, with interest at 5% from September 9, 1922, and further decreed a lien in favor of Zacks and Lerner in the amount of $1,850.40, which was filed on October 31, 1922, and provided that amount decreed to Zacks and Lerner should be paid to plaintiff.

"Zacks and Lerner abandoned the work which they were doing under their contract previous to putting on the roof.    *    *    *

"The plaintiff Cooper was not entitled to payment for materials delivered until the roof was on as per the written memorandum and contract."

In this connection we quote from the record.    Mr. Cooper is the witness:

*"By Mr. Routier: Q.* I want to ask you, you filed

a lien on the 24th day of October for $18,147.97, did you not?

"*A.* Yes.

"*Q.* You also filed another lien on the 8th day of November, 1922, for $18,147.97?

"*A.* Yes.

"*Q.* Do you claim one or two liens against the premises?

"*A.* One.

"*Q.* One lien.    How was it that you filed your lien on the 24th day of October for that amount and then without releasing it filed another lien on the 8th of November, if you know?

"*Mr. Schueler:* We filed the lien, your honor, please.

"*Mr. Routier:* Just a minute.    I am asking him.

"*Mr. Schueler:* I filed them for the company. There was a mistake in the first jurat and I corrected it in the account.

"*Q.* You don't know anything about that?

"*A.* I knew there was a mistake."

Mr. Zacks is the witness:

"We have filed a lien against the property for $28,893.47.    In our lien is included A. & W. Cooper for $18,147.97.

"Counsel for the defendant theatre company concedes the regularity of the proceedings of Zacks and Lerner with reference to the filing and serving of the claim of lien and the filing of the cross-bill to enforce the said lien, but does not concede that a lien should be decreed in the amount claimed.

"*Q.* So your lien should be reduced by that much if a lien is decreed in favor of Cooper?

"*A.* Yes, sir.

"*Q.* You did not complete the work, did you?

"*A.* No, sir."

The record shows that Mr. Ross was no better to the materialmen and the labor men than he was to the theatre company.    The record shows beyond question that Mr. Cooper furnished material that went into the building of the value found by the trial judge, and that he had not been paid for it.    We think the filing

of the two liens by Mr. Cooper was fully explained, and the filing of the Zacks and Lerner lien that included the Cooper material cured any defect if there was any.

As to the claim that Mr. Cooper was not to be paid until the roof was on: When this arrangement was made everybody expected that Ross would complete the building, at the latest by September. He never did complete it, but the roof was on before the trial judge allowed the lien. We think the decree as to the Cooper lien and the Zacks and Lerner lien should be affirmed. As the theatre company and the discount company both appealed, neither will be allowed costs of this court. As the Den Braven and Belisle lien has been modified by agreement of counsel, it will stand modified and affirmed, without costs in this court. As to the other liens, the appellees will recover costs.

The other claims of counsel have been considered but will not be discussed.

Except as stated, the decree of the court below is affirmed.

McDonald, C. J., and Bird, Sharpe, and Steere, JJ., concurred. Clark and Fellows, JJ., concurred in the result. Wiest, J., did not sit.