162

See, also, 75 S.W.(2d) 165.

Bean, Duggan & Bean, of Lubbock, and Jno. B. Daniel, of Temple, for appellants.

Vickers, Campbell & Evans, of Lubbock, for appellees.

JACKSON, Justice.

This suit was instituted by A. V. McCarty, Jr., adjudged to be insane, acting by his wife, Dora McCarty, who is his duly appointed guardian. He sought the cancellation of a lien held by the Temple Trust Company against lot 6 in block 12 in the town of Muleshoe, Bailey county, Tex., and alleged that the debt secured by such lien was usurious, and, if the payments he had made were credited on the principal, such debt would be discharged.

A. V. McCarty, Sr., and his wife, Kate McCarty, were also plaintiffs and asked to be discharged from all liability on said debt.

The Temple Trust Company, a domestic corporation with its domicile in Bell county, Tex., acting by and through its duly appointed receiver, H. C. Glenn, in due time filed a plea of privilege. The plaintiffs filed their controverting affidavit, a hearing was had thereon, and the plea overruled.

The record discloses that A. V. McCarty, Jr., contracted with the owner to purchase lot 6 in block 12 in the town of Muleshoe, Bailey county, Tex., for the purpose of erecting thereon a brick and concrete two-story building; that his father, A. V. McCarty, contracted to purchase from the same owner lot 7 in said block, which was adjacent to lot 6.

In order to erect the improvements contemplated by each of said purchasers, it was necessary for each to secure a loan, and for this purpose they approached T. B. Duggan, vice president of the Temple Trust Company, who maintained an office for said company at Lubbock, Tex., acquainted him with their wish to borrow money, advised him that the building to be erected on lot 6 by A. V. McCarty, Jr., would cost something more than $10,000 and the building to be erected on lot 7 by the father would cost approximately $4,000. After some negotiations, the vice president agreed to loan $8,000 to be secured by a lien on the two lots and the improvements to be erected thereon, but advised the McCartys that he would prefer to make such loan in the name of the father, as it would look better to the company, but agreed that the loan should be and constitute the obligation of A. V. McCarty, Jr. T. B. Duggan suggested that the title to both lots be conveyed to the father, and this was done.

The company prepared a note for the sum of $8,800, payable sixty days after date, bearing interest at the rate of 10 per cent per annum from date until paid and a mechanic's lien contract against the two lots to secure the payment of said note, and such instruments were, on September 29, 1925, executed by A. V. McCarty, Sr., his wife and L. A. McDaniel, who, according to said contract, was to furnish the labor, material, etc., for the erection and completion of the improvements. On the same day L. A. McDaniel, for the recited consideration of $7,920, transferred and assigned said note and mechanic's lien to the Temple Trust Company.

On November 12, 1925, before its due date, A. V. McCarty and his wife, for the purpose of renewing and extending the $8,800 note and lien, executed to the Temple Trust Company five notes for $500 each, four for $1,000 each and one for $2,300, due respectively from December 1, 1926, to December 1, 1935, inclusive, and bearing interest at the rate of 7 per cent. per annum, payable semiannually, and to secure the payment of said notes executed a deed of trust on lots 6 and 7. These notes and the coupons attached thereto stipulate for interest after maturity at the rate of 10 per cent. per annum. The deed of trust provided in effect that, if default was made in the payment of any of said notes or any interest coupon attached thereto, the Temple Trust Company or its successors or assigns should have the option of declaring the principal and interest then accrued due and payable and sell said lots to the highest bidder for cash at the courthouse door in Bailey county, Tex.

On December 16th thereafter A. V. McCarty and his wife and L. A. McDaniel made affidavit that the improvements had been completed and accepted by the owners and no lien existed against the property except the $8,800 held by the Temple Trust Company.

On February 12, 1926, the company informed Mr. McCarty that:

"We have today made settlement in your loan as follows:

| | |
|---|---|
| Net amount of loan | $7,920.00 |
| Paid out to Acme Brick Co. $1,650.77 | |
| Citizens National Bank 2,000.00 | |
| Lydick Roofing Co. 577.70 | |
| Ben Sibbett Iron & Foundry Co. 573.78 | |

"We hand you herewith check for 3117.75, balance left after paying the bills we hold in this office against your building."

This balance was deposited in the name of A. V. McCarty in a special account and paid out for expenses connected with the building on the checks of A. V. McCarthy, Jr.

Some time in 1931, the date not appearing, the Temple Trust Company released lot 7 from the lien it held, at the request of A. V. McCarty, Sr.

On July 3, 1931, A. V. McCarty, Sr., and his wife conveyed lot 6 to A. V. McCarty, Jr. Appellant objected to the form of the deed, and prepared what it termed a correction deed, which was executed at its request on July 18, 1931, in which deed appellees allege A. V. McCarty, Jr., was required to assume the payment of the balance of the original indebtedness.

On July 18th thereafter A. V. McCarthy, Jr., and wife, for the purpose of renewing and extending the unpaid balance of said $8,800 loan, executed their two deeds of trust against lot 6 for an aggregate balance of $6,300, payable as therein provided, in which instruments it is recited that A. V. McCarty, Jr., in the purchase of lot 6, assumed the payment of the balance of said original debt.

A. V. McCarty, Jr., paid the purchase money for lot 6, and, from the time of the completion of the building thereon, used and occupied it and made all the payments on the notes executed by his father and mother evidencing such indebtedness.

Appellants admit that the payments alleged to have been made on such indebtedness prior to July 18, 1931, are supported by the testimony, and such allegations show that payments had been made to that date aggregating $7,230. The testimony authorizes the finding that this amount, added to the payments made after said date, was more than sufficient to have discharged and satisfied the original debt of $7,920.

A. V. McCarty, Sr., during the negotiations for and the consummation of the loan for $7,-920 secured by a lien on lots 6 and 7, borrowed from the Temple Trust Company $4,000, and secured the payment thereof by a lien on 160 acres of land in Lubbock county, and, with this sum and other moneys independent of the $7,920 loan, he paid for the erection of his building on lot 7.

■ The testimony tends to show that the Temple Trust Company prepared and required the execution of the papers evidencing the original loan, including the renewal and extension thereof by the notes and deed of trust executed by A. V. McCarty and his wife, that all of such instruments constituted but one transaction, and that the note and mechanic's lien were not purchased in good faith at a discount from L. A. McDaniel. Under the facts in this record, the loan constituted an usurious transaction.

. "Contracts of this character, where the principal of the note is for greater sum than that actually lent, whatever the subterfuge or cloak sought to be used to conceal interest charged in excess of the legal rate, have been frequently condemned as usurious." Temple Trust Co. v. Stobaugh (Tex. Civ. App.) 59 S.W.(2d) 916, 918, and authorities cited.

■ The testimony also discloses that the Temple Trust Company prepared the deed from A. V. McCarty to A. V. McCarty, Jr., requiring the assumption of the original debt and the deeds of trust executed by A. V. McCarty, Jr., and his wife reciting the assumption of such debt. The record is sufficient to warrant the court in concluding that such instruments, together with the acts and conduct of said company, evidence a plan, scheme, or design on the part of the company to evade the usury laws of the state.

■ A. V. McCarty, Jr., having signed none of the notes or written instruments evidencing the original loan and liens, appellant's contention is that he was a stranger to the transaction, and, after having assumed the payment of the balance of such original loan, was estopped as a matter of law to plead usury, and, since he failed to allege or prove a cause of action, the court erred in overruling the plea of privilege.

The law is that a grantee who assumes the payment of an usurious obligation as all or a part of the purchase price for property cannot defeat such obligation on a plea of usury. Moore et ux. v. Temple Trust Co. (Tex. Civ. App.) 60 S.W.(2d) 828; Volunteer State Life Ins. Co. v. B. H. Robinson et al. (Tex. Civ. App.) 74 S.W.(2d) 188, and authorities therein cited.

The general rule is that only a debtor or those in privity with him can attack a transaction as usurious.

At the suggestion of the Temple Trust Company, the legal title to lot 6 was vested in A. V. McCarty, who held such title in trust for the benefit of A. V. McCarty, Jr., who was the owner of the equitable title to said lot. Said company knew of this transaction, was a party thereto, and agreed that the loan should be and constitute the obligation of A. V. McCarty, Jr.

"It has been held that one who mortgages his property to secure the debt of another, becomes one on whom the burden of the debt falls and is not therefore such a stranger to

the transaction as to be prevented from recouping against the debt the amount of interest paid in excess of the legal rate." 66 C. J. 339, § 353.

"A note given nominally by one maker in reality for a loan to another who has agreed to pay usurious interest, is tainted with usury." 66 C. J. 243, § 191.

"It is contended by defendants that the plea of usury is personal, and can be interposed only by the maker of the note; that the note was executed by John Faison, not Frank, who has interposed it in this action. 'It is a well-established rule that the defense of usury is personal to the debtor or borrower and his privies by law or contract.' Webb, Usury, § 365; Davis v. Garr [6 N. Y. 124], 55 Am. Dec. 398. And it is true that it is a personal defense, and the right of affirmative relief is likewise personal; but it is personal in the sense that it is to the exclusion of strangers or parties disconnected with the immediate transaction. It is limited to the borrower or debtor upon whom the burden falls, whether he be the maker of the note (the evidence of the debt) or not, or otherwise has an interest in the transaction which can be injuriously affected by the usury. In this case the plaintiff was the original debtor. The debt was secured by his Urquhart and Round Pond tracts of land, the legal title to which was shifted to John, accompanied with his (plaintiff's) debt. But plaintiff did not cease to be a debtor. He continued in possession, and occupied, managed, and controlled on his own account both of said tracts, and made payments upon said debts. * * * Should the Urquhart and Round Pond tracts have been sold under the trust, it would have been no loss to John, but to plaintiff, whom John was helping. Therefore it was to plaintiff's interest that the debt should be paid, to the end that the title be reconveyed to him, in the payment of which, or any part thereof, the plaintiff was directly interested, just as much as if the papers had been signed by himself instead of John. He, being the substantial debtor, had a right to set up a personal plea in his behalf to protect his interest involved in the transactions with the other parties, out of which this litigation has grown." Faison v. Grandy, 128 N. C. 438, 38 S. E. 897, 899, 83 Am. St. Rep. 693.

In Smiley v. Bank of Wyoming, 104 W. Va. 471, 140 S. E. 330, 333, the bank made a loan to A. Smiley, but, in order to prevent its books showing an excess loan to him, accepted as evidence of the loan a note signed by J. A. Toler. The court says: "The evidence is conclusive that Smiley was the borrower, and that the use of Toler's name, and also the use of the name of Smiley's wife, Bridge Smiley, on two other notes, was for the purpose of indirectly making the loans to Smiley, * * *" and "he was entitled to set up and recover the usury exacted from him." See, also, Cooper v. Ross et al., 232 Mich. 548, 205 N. W. 592; Grannis v. Stevens et al., 157 App. Div. 561, 142 N. Y. S. 835; Richardson v. Foster et al., 100 Wash. 57, 170 P. 321.

The Temple Trust Company, through its receiver, claimed a valid lien on lot 6, which it was threatening to foreclose. Under the record, the original loan was usurious. A. V. McCarty, Jr., was the real party at interest in such original loan. The sale of the lot and improvements under foreclosure would have been his loss and injuriously affected his right. The payments he had made, if applied to the principal, would have discharged the debt and rendered the lien unenforceable. He sued for the cancellation of the lien in the county where the land is situated, and in our opinion the court correctly overruled the plea of privilege, and the judgment is affirmed.

### GLENN et al. v. McCARTY et al.
### No. 4353-A.

Court of Civil Appeals of Texas, Amarillo.

Sept. 24, 1934.