FAISON v. GRANDY.

(Filed June 1, 1901.)

1. INTEREST—*Lex Loci Contractus—Lex Loci Solutionis—Conflict of Laws.*

Money loaned in Virginia on real estate in North Carolina is governed by the rate of interest in North Carolina.

2. USURY—*Interest—Negotiable Instruments—Purchaser Without Notice.*

A note embracing usurious interest is void in the hands of a purchaser before maturity and without notice.

3. APPEAL—*Review—Assignment of Error—Rehearing—Exceptions and Objections.*

Where no exception is taken in trial court to a ruling, and no error is assigned upon rehearing, the Supreme Court will not review the ruling.

4. USURY—*Negotiable Instruments—Personal Defense.*

The plea of usury being a personal plea, can be taken advantage of only by the borrower or debtor or other person directly connected with the transaction, upon whom the burden of the usury falls.

5. ESTOPPEL—*Judgment.*

A judgment which provides that issues relating to usury are reserved by consent to be passed on by referee does not estop the raising of the question of usury before a referee.

6. ESTOPPEL—*Judgments—Representations—Statements.*

Representations and statements not relied or acted on by the party to whom made do not work an estoppel.

ON REHEARING this case was modified and remanded. For former opinion, see 126 N. C., 827.

FAISON *v.* GRANDY.

*Day & Bell, R. B. Peebles,* and *D. L. Russell,* for the plaintiff.

*T. N. Hill, Pruden & Pruden, Shepherd & Shepherd,* for the defendants.

COOK, J.  This action is now reheard upon the petitions of both plaintiff and defendants.  It was heard at February Term, 1900 (126 N. C., 827), upon appeal by plaintiff from the judgment rendered by his Honor, Judge *Brown,* upon exceptions thereto taken.

The plaintiff now assigns as grounds for rehearing:

1. For that the Court overlooked the fact that the record showed that items of usurious interest other than the $638.93 mentioned in the opinion of the Court, entered into the consideration of the $10,000.00 bond, and two drafts aggregating, $4,400, to-wit: On page 173 of printed record, $119.71; on page 174, $132.81, $933.38, $575; on page 175, $120.63, $62.12, $711.07, $97.34—all of these sums were interest at the rate of 9 per cent per annum charged in the account on page 175, which amounted to $14,421.74 up to January 1, 1876, and which was settled by the $10,000.00 bond and two drafts.  All of said sums were charged against plaintiff by the referee and Court below, upon the ground that the plea of usury was not open to plaintiff.  The referee found as a fact that there was in said account $638.93 charged against Faison as a bonus, and for which Faison received nothing. This sum was separate and apart from the interest charged in said account at 9 per cent.  In said account, The Farmers and Merchants Loan and Trust Company credited Faison with certain items of interest at 9 per cent, to-wit: On page 174, $138.99, $54.82, $190.43, $178.32.  These items of course should be deducted from the items above mentioned as having been charged against said Faison.

2. For that the Court overlooked a clerical error of $208.71

·made by the referee. This error occurred in this way, to-wit: In the account, amounting to $14,421.74, interest was calculated up to January 1, 1876, and when the bond and drafts were given to close it, they drew interest from that date. In making out the account mentioned in finding 14, page 79, the referee overlooked that fact, and brought his account down to March 2, 1876, and included interest up to that time, and still his account fell short of the account closed by bond and drafts $638.93. If he had stopped at January 1, 1876, his account would have been two months interest smaller, to-wit: $208.71, and hence the difference would have been $845.67 instead of $638.93.

3. That the Court overlooked the fact that the "improper charges" did *not* consist of interest in excess of legal rates. Said sum was made up as follows: Out of the $9,500 note due June 2, 1873, came $495.20. This note was charged to Faison at $9,500, page 174. The referee charged it at $9,004.80, making a difference of $495.20 of principal, not interest, because the referee found that Faison got for said note only $9,004.80. Referee disallowed item of $78.75, page 175, October 14, 1875, was not allowed against Faison. Item of $48.25 (charged twice) was allowed once only. Item of $82.71, page 172, was allowed at $80.00, making $495.20, $78.75, $48.25, $625.91. The balance of $16.73 must have arisen from error in calculation. Excepting the above items, the record will show that the referee allowed against Faison every item contained in accounts on pages 170 to 176, with interest at nine per cent per annum (see pages 89 to 93), except the following, which appeared both on the debit and credit sides of the account, to-wit: $2,373.00 and $1,267.55 charged on page 173, and credited on page 174 and page 176, and item $3,390, charged on page 175, credited on page 176, and $2,935.45 charged on page 174, and credited on page 173.

FAISON *v.* GRANDY.

His Honor, Judge Brown, held that the referee was in error in his first conclusion of law—"that the said Trust Company, notwithstanding its charter, is subject to the general interest and usury laws of Virginia, and consequently that the note for $9,500, dated March 1, 1873, bearing 9 per cent interest on its face is usurious." From this ruling defendants did not appeal, and plaintiff not having assigned the same as error upon rehearing, it must so stand. While we agree with his Honor in his conclusion that the transaction was usurious, we differ from him in the reasoning. The record shows that the money was loaned upon real estate security situate in this State, the security being the basis of the loan; the rate of interest is governed by the interest laws of this State, notwithstanding that the loan was made in the State of Virginia—the reasons for which fully appear in *Meroney v. Loan Asso.*, 116 N. C., 882 (and in *Jackson v. Am. Mortgage Co.*, a Georgia case therein cited). Interest therefore should have been charged at the rate of 6 per cent—not nine.

It therefore follows that those items of interest which are charged at nine per cent are usurious, and the items of account to which errors are assigned upon the rehearing must be restated with interest calculated at six per cent, both upon the debit and credit sides, and the errors pointed out in plaintiff's third assignment must be corrected—excepting, however, from the restatement of the account the interest on the $9,500 note, to which usury is not pleaded and to which no exception is taken upon appeal. For in plaintiff's complaint, allegation 67, he says: "This does not apply to the $9,500 note of March 1, 1873, on which plaintiff admits nine per cent interest was properly charged;" and in exception 56 he says: "He should have held that said company had the right to charge nine per cent on the $9,500 note." The second assignment of plaintiff is a patent error and must be cor-

FAISON v. GRANDY.

rected.    The record shows that the referee added interest on
the sum *total* from January 1, 1876, to March 2 (two months
and two days—$208.71) ; and when the note and draft were
executed in May, 1876, for that sum, they bear interest from
January 1, 1876, thus charging interest twice for two months
and two days during the same time.

Defendants' petition for rehearing is based upon errors as-
signed:

1. That the note was assigned to Mrs. Grandy and Wm.
Selden in 1881, instead of February 2, 1878, as stated by the
Court.

2. That the item of $638.93 was not usurious as held by
the Court.

4. That it was error in holding that the plaintiff was not
precluded from setting up the plea of usury against the
$10,000 note, and was not estopped from pleading usury.

5. That plaintiff was not entitled to a credit of the $638.93
item.

6. That they should not have been taxed with the costs
in this Court.

A careful review of the ruling of this Court upon the item
of $638.93, pointed out in the second and fifth assignments
by defendants fails to discover any error in its former de-
cision, and the same is reaffirmed.

In considering the defendants' other assignments upon pe-
tition to rehear, the record reveals the fact that the transfer of
notes by the Loan and Trust Company was, as claimed, made
on February 2, 1878, instead of 1881, as reported by the ref-
eree (XXXIII), and adopted by this Court (at February
Term, 1900), as correct; but this does not alter the status of
the parties, except in so far is it shows that the note was
transferred to William Selden and Mrs. Grandy *before* ma-
turity, which is not material, since it is the well-settled law
of this State that a note embracing usurious interest is void

in the hands of a purchaser before maturity and without no-
tice.    *Ward v. Sugg,* 113 N. C., 489, and cases there cited,
wherein *Coor v. Spicer,* 65 N. C., 401 is disapproved.

This brings us to the consideration of the assignment taken
to the ruling of this Court in holding that his Honor, Judge
Brown, was in error in adjudging that the plaintiff was pre-
cluded from setting up the plea of usury against the bond, it
being the *third* finding in his judgment.

It is contended by defendants that the plea of usury is
*personal* and can be interposed *only* by the maker of the note;
that the note was executed by *John* Faison, not Frank, who
has interposed it in this action.    "It is a well-established
rule that the defence of usury is personal to the debtor or bor-
rower and his privies by law or contract."    Webb on Usury,
sec. 365; *Davis v. Garr,* 6 N. Y., 124; 55 Am. Dec., 398.
And it is true that it is a personal defence, and the right of
affirmative relief is likewise personal; but it is personal in
the sense that it is to the exclusion of strangers, or parties dis-
connected with the immediate transaction.    It is limited to
the borrower or debtor upon whom the burden falls whether
he be the *maker* of the note (the evidence of the debt) or not,
or otherwise has an interest in the transaction which can be
injuriously affected by the usury.    In this case the plaintiff
was the orignal debtor; the debt was secured by *his* "Urqu-
hart" and "Round Pond" tracts of land, the legal title to
which was shifted to John, accompanied with his (plaintiff's)
debt.    But plaintiff did not cease to be a debtor; he continued
in possession, and occupied, managed and controlled on his
own account both of said tracts, and made payments upon said
debts.    It was not upon the credit of John W. Faison, who is
alleged in defendant's answer to have been insolvent (para-
graph 35), that the money was advanced in taking up the
note, but upon the value of the land which had by common
consent been taken out of the name of plaintiff and put into

that of John. The bidding in of a $22,000 tract of land encumbered with only $4,680.81 of purchase-money for $1,000, and the Round Pond tract for $2,500 by the Loan and Trust Company, for which they took deed, and then conveying same land to plaintiff's brother, John, and taking a security upon said land for the $10,000 note, and upon a tract of John's land to secure the two drafts which covered the indebtedness due by plaintiff in which the usury was embraced, was well known to the parties to the transaction, coupled with the further agreement that plaintiff should pay off that indebtedness and John would reconvey the land to him, *was all on paper*, leaving the actual relations of the parties unchanged so far as otherwise could appear. John exercised no control over the land or the use or profits of it. Should the Urquhart and Round Pond tracts have been sold under the trust, it would have been no loss to John, but to plaintiff whom John was helping. Therefore it was to *plaintiff's interest* that the debt should be paid, to the end that the title be reconveyed to him, in the payment of which, or any part thereof, the plaintiff was directly interested, just as much as if the papers had been signed by himself instead of John. He being the substantial debtor had a right to set up a personal plea in his behalf to protect his interest involved in the transactions with the other parties, out of which this litigation has grown.

The defendants further insist that the plaintiff is estopped by the judgment rendered by Judge Boykin from claiming that the sum owing by him was less than $14,000 and interest. But in what way we are not able to see. The judgment expressly provides that "all the issues relating to the questions of usury have been reserved, by consent, to be hereafter passed on by any referee who may be appointed to state an account in this action," and W. R. Allen was appointed referee and ordered "to pass upon the issues raised by the plea of usury and report his findings and rulings," etc., which he has done, and

his report is here on appeal by plaintiff from the judgment rendered thereon by Judge Brown confirming the same.

Nor are we able to see the force of defendant's contention of an estoppel *in pais* precluding plaintiff from pleading the statute of usury. Defendants cite the testimony of plaintiff, wherein he says that, having failed to get the account settled by arbitration with the Loan and Trust Company, and failing to get it correctly adjusted, he accepted the statement of the Trust Company because he could not raise the money to take up the liens, and got Grandy & Sons to give the drafts and take up the note. But defendants, Grandy & Sons, not only do not set up such defence, but aver in their answer that they took up the debts "in order to befriend John W. Faison and prevent a sale of said property and a probable sacrifice thereof," which was threatened by the administrator (paragraph 27 of answer); also in paragraph 7 of their answer, they aver that "sometime after the execution of said note for $10,000 and deed of trust, the said John W. Faison apprehending * * * applied to defendants, C. W. Grandy & Sons, to assist him. * * * The said C. W. Grandy & Sons, believing said note to be well secured and good, interested themselves in the matter and induced Dr. William Selden and Mrs. Ann D. Grandy, executrix of C. W. Grandy, Sr., to purchase, * * * and this was done. The defendants, C. W. Grandy & Sons, * * * were actuated in making the arrangements solely by motives of friendship for him." From plaintiff's testimony it seems that he thought defendants were favoring him, while they *deny* the same by saying that they were actuated *solely* by motives of befriending *John W. Faison.* Surely defendants can not be prejudiced by representations or statements, which they did not act or rely upon; nor can they now claim that they were misled, in contradiction of their own *positive* averment. Had they been misled by the representations and statements of plaintiff, and in consequence of such had acted

to their injury, then he would have been estopped; otherwise not. As the case is retained for further directions in the Court below, no judgment will be entered in this Court, and proceedings will there be had in accordance with this opinion.

Error, and petition allowed.