## GLENN et al. v. McCARTY et al.
### No. 5036.

Court of Civil Appeals of Texas. Amarillo.
June 12, 1939.

Rehearing Denied July 10, 1939.

John B. Daniel and W. R. Brown, both of Temple, for appellants.

Vickers & Campbell, of Lubbock, for appellees.

STOKES, Justice.

This case in various aspects has been before this court on three former appeals. The first appeal was by H. C. Glenn, receiver of the Temple Trust Company, from an adverse ruling of the district court of Bailey County upon a plea of privilege and is reported in 75 S.W.2d 162. The second appeal was by the receiver from a judgment entered by the same trial court in which an injunction was granted to appellees, restraining the receiver from prosecuting in the district court of Bell County a suit involving the same controversy and is reported in 75 S.W.2d 165. The third appeal was by H. C. Glenn, receiver, from an adverse judgment of the district court of Bailey County upon the merits of the case and is reported in 103 S.W.2d 1098. Upon the last appeal the case was reversed and remanded for error committed by the trial court in allowing as penalty a judgment in favor of the appellees for double the amount of certain interest paid on the obligations involved in the litigation.

The case was again tried on the 9th of May, 1938, before the court, without the intervention of a jury, and judgment again was rendered in favor of appellees in which it was decreed the notes and loan transaction involved were usurious and credits of all amounts paid as principal and interest were applied to the principal of the indebtedness which discharged all of the original obligation except $193.96, for which the trial court granted judgment in favor of the receiver and others and foreclosed the liens given to secure the same. Appellants H. C. Glenn, receiver of the Temple Trust Company, and Grace Presbyterian Church, duly excepted to the judgment, gave notice of appeal, and the case is now before us for the fourth time.

The facts, briefly stated, are that on November 12, 1925, appellee A. V. McCarty, Sr., and his wife executed and delivered to the Temple Trust Company ten notes, the first five being in the sum of $500 each, the sixth, seventh, eighth, and ninth notes in the sum of $1000 each, and the tenth in the sum of $2300, aggregating $8800. The notes provided for interest from December 1, 1925, at the rate of 7 percent per annum, the interest payable semi-annually on the first days of June and December of each year. To secure the payment of the indebtedness, A. V. McCarty, Sr., and his wife executed a deed of trust upon lots Nos. 6 and 7, in block No. 12, of the Original Town of Muleshoe, in Bailey County. The deed of trust provided that it was in extension and renewal of a note executed by McCarty and wife to L. A. McDaniel and a mechanic's lien given by them upon the lots to secure the same, which note and lien had been acquired by the Temple Trust Company from McDaniel, the mechanic's lien note being in the sum of $8800. The mechanic's lien was in the form of a building contract in which McDaniel agreed to erect and complete in a workmanlike manner and in accordance with certain plans and specifications two business buildings consisting of a two-story building with basement on lot No. 6, and a one-story building on lot No. 7.

The mechanic's lien and note were executed on the 29th of September, 1925, and on the same day they were assigned to the Temple Trust Company by McDaniel for a recited consideration of $7920. The buildings were erected and completed between that date and the 12th of November, 1925, when the ten notes and deed of trust were executed by the McCartys to the Temple Trust Company. The $7920 recited as consideration for the mechanic's lien and note was not paid to McDaniel but the record shows that $4802.25 was paid by the Temple Trust Company to Acme Brick Company, Lydick Roofing Company, Ben Sibbett Iron & Foundry Company, and the Citizens National Bank. These parties, other than the bank, evidently had furnished material for the erection of the buildings. On February 12, 1926, $3117.75, being the balance of the $7920, was remitted by the Temple Trust Company to A. V. McCarty, which finally closed the loan transaction.

On July 13, 1931, A. V. McCarty, Sr., and his wife conveyed lot No. 6 to A. V. McCarty, Jr., by warranty deed in which the consideration was recited as $14,000, of which the sum of $7700 was recited as cash, and the balance evidenced by a vendor's lien note in the sum of $6300, pay-

able to A. V. McCarty, on or before December 1, 1931. On the 18th of July, 1931, five days after this deed was executed, A. V. McCarty and wife executed another deed conveying lot No. 6 to A. V. McCarty, Jr., in which it was recited that at the time the former deed was executed the Temple Trust Company held a valid mortgage on the lot to secure the payment of a debt of $6300, and that it was not the intention of the parties to create a new debt but that the grantee, A. V. McCarty, Jr., should assume the indebtedness held by the Temple Trust Company. The correction deed, therefore, recited a total consideration of $14,000, of which the sum of $7700 was recited as cash, and the grantee, A. V. McCarty, Jr., assumed the balance of $6300 due the Temple Trust Company, being the balance of the indebtedness created by the ten notes and deed of trust of November 12, 1925, executed by A. V. McCarty and his wife on both of the town lots.

On the 18th of July, 1931, the same day upon which the correction deed was executed, A. V. McCarty, Jr., and his wife, Dora, executed to the Temple Trust Company one note in the sum of $5500, bearing interest at the rate of 9.1 percent per annum, the principal and interest payable in monthly installments of $68.75 each, the first installment to become due September 1, 1931. To secure the payment of this note they executed a deed of trust on lot No. 6. On the same day they executed another note in the sum of $800, payable to Temple Trust Company on the 1st of December, 1931, and secured the same by a second deed of trust on lot No. 6. Both of these deeds of trust carried provisions of subrogation to the mechanic's lien assigned to the Temple Trust Company by McDaniel and contained the further provision that they were in renewal and extension of the unpaid balance of $6300 of the notes executed by A. V. McCarty, Sr., and his wife on November 12, 1925. Upon the execution and delivery of these last notes and deeds of trust, the Temple Trust Company released A. V. McCarty, Sr., and his lot No. 7 from the former deed of trust lien.

On the 17th of July, 1933, Dora McCarty, wife of A. V. McCarty, Jr., filed in the county court of Lubbock County an information in which she alleged her husband, A. V. McCarty, Jr., was of unsound mind and applied to the court for letters of guardianship upon his person and estate. The application was granted by the court and Mrs. McCarty was duly appointed as guardian. On the 19th of April, 1934, Dora McCarty, on behalf of herself and as guardian of the estate of A. V. McCarty, Jr., joined by A. V. McCarty, Sr., and his wife, filed this suit against the Temple Trust Company, a corporation, and H. C. Glenn, its receiver, which was twice amended, the second amended original petition having been filed May 9, 1938, in which the Grace Presbyterian Church of Temple was also made a defendant. In their pleadings appellees set up the execution of the various notes, deeds of trust, assignment, and deeds detailed above, and alleged, substantially, that in August, 1925, McCarty, Jr., and his wife, Dora, purchased lot No. 6, in block No. 12, for the purpose of improving the same and occupying it as a drug store. They alleged that, at the same time, A. V. McCarty, Sr., purchased the adjoining lot No. 7, in block No. 12, with the purpose and intention of erecting thereon a building to be rented for mercantile purposes; that in order to finance the erection of the improvements they negotiated with the Temple Trust Company through T. B. Duggan, its vice-president and agent, for two loans, one to McCarty, Jr., in the approximate sum of $8000 for the purpose of completing the improvements on lot No. 6, and another in the sum of $4000 to McCarty, Sr., for the purpose of completing the improvements on his lot No. 7; that at the time they negotiated with T. B. Duggan for the loans, they had contracted respectively for the lots mentioned but neither had acquired the title; that in the negotiations concerning the loans Duggan suggested and required that both lots be conveyed to A. V. McCarty, Sr., and the loan on behalf of McCarty, Jr., be made in one transaction of $8000, secured by a deed of trust on both lots, and the other loan in the sum of $4000 on behalf of McCarty, Sr., be secured by farm lands belonging to the latter located in Lubbock County. They alleged that Duggan suggested and represented to them that when the first five notes aggregating $2500 had been repaid by McCarty, Jr., the lender would then release lot No. 7 and carry the remaining portion of the loan against lot No. 6 in the name of A. V. McCarty, Jr. They alleged that, while this arrangement was required by Duggan, it was agreed and understood between all of the parties that the $8000 was in truth and in fact the loan and obligation of McCarty, Jr., and that, when he had paid $2500 on the loan, the title to

lot No. 6 would then be conveyed to him by McCarty, Sr., and renewal notes and deed of trust executed by McCarty, Jr.

It was further alleged that no money was paid by the Temple Trust Company to McDaniel, the purported contractor for the buildings, but that the contractor was paid by McCarty, Jr.; that Duggan advised appellees that the note to be executed by McCarty, Sr., on behalf of McCarty, Jr., would be in the sum of $8800, but that 10 per cent. would be deducted therefrom and that $7920 would be the net amount of the loan. It was alleged, and the record shows, that all the papers in connection with the loan, including the mechanic's lien and its assignment, were prepared by T. B. Duggan; that the first five notes aggregating $2500, with all interest thereon, were paid by McCarty, Jr., as they became due and that he also paid the interest as it fell due upon the balance of the loan. After the first five notes were paid, McCarty, Sr., and his wife executed the original deed and the deed of correction as above stated, conveying lot No. 6 to McCarty, Jr., the correction deed being executed at the suggestion of Duggan who caused it to be prepared and had it executed on the same day the renewal notes and deed of trust were executed by McCarty, Jr., and his wife, Dora. .

It was alleged, and the allegations are supported by the evidence, that $7920 was the total amount advanced or loaned to McCarty, Jr., although the notes executed by McCarty, Sr., in that loan were in the aggregate sum of $8800, and the principal contention of appellees is that by reason of the discount of $880 made upon the $8800 note, and the provision contained therein for interest at the rate of 7 per cent. per annum, the original notes executed by McCarty, Sr., on behalf of McCarty, Jr., were usurious. This contention is denied by appellants and they vigorously contend the note was not usurious for a number of reasons, one of which is the deed of trust contained an acceleration clause in which it was provided that in case of default in the payment of any one of the series of ten notes or failure of the maker to discharge the other obligations provided therein, the whole indebtedness and "all sums secured by this mortgage, to-wit, the principal and interest then accrued on said bond and all advances made to or on account of the grantors therein for taxes, assessments and charges of every kind, shall at once become due and payable", the contention, in effect, being that the provisions of the notes and deed of

trust did not reveal usury and if the amount deducted therefrom is considered as interest, the acceleration clause provides that in the event of accelerated maturity only the interest accrued on the bond or notes shall be collected. :

The case was tried before the court without the intervention of a jury and the trial judge filed findings of fact and conclusions of law to the effect that the ten notes executed by A. V. McCarty, Sr., and his wife on November 12, 1925, were usurious because they aggregated the sum of $8800 and only the sum of $7920 was actually loaned or advanced thereon by the Temple Trust Company, and that the discount of $880, together with the interest of 7% per annum provided in the face of the notes, together with the acceleration clause provided in the deed of trust, made it possible for the payee to collect in one year more than 10 percent, the conventional rate of interest provided by law. He further found that when all of the payments that had been made on the principal and interest of both loans were credited against the $7920 actually loaned by the Temple Trust Company, there remained a balance due on the $5500 note held by Glenn, receiver, of $160, and a balance remaining due on the $800 note held by appellant Grace Presbyterian Church of $33.96. Judgment was rendered in favor of appellants for the amounts thus found to be due upon the notes held by them respectively and for foreclosure of the deed of trust liens on lot No. 6 with the usual provisions for judicial sale and the application of the proceeds accordingly under the answer and cross-action filed by them in which they sought recovery of the balance due upon the note of $5500 held by the Temple Trust Company and the note of $800 held by Grace Presbyterian Church.

The grounds upon which appellants base their contentions that the judgment is erroneous and should be reversed are, substantially, first, that error was committed by the trial court in admitting, over their objections, the testimony of A. V. McCarty, Sr., concerning conversations and negotiations had between him and his son, A. V. McCarty, Jr., with T. B. Duggan concerning the original loans because McCarty, Jr., was, at the time of the trial, a non compos mentis and, the witness being a party to the suit, his testimony was not admissible under Article 3716, R.C.S., 1925, sometimes referred to as "The Dead Man Statute." Secondly, that neither the pleadings nor the evidence warranted the

conclusion that the equitable title to lot No. 6 was vested in McCarty, Jr., at the time the original loan was made nor that McCarty, Sr., held the legal title under any sort of trust for McCarty, Jr. Thirdly, there being no written contract under which McCarty, Jr., was obligated to pay the ten notes of the original loan, he cannot maintain an action for usury thereon because, under the law, such an action must be based upon a written contract which obligates the person bringing the suit to pay the debt. Fourthly, usury cannot be predicated upon an acceleration clause which prohibits the collection of unearned interest. Fifthly, the assumption of a pre-existing debt and lien by a purchaser estops him from pleading usury upon such pre-existing debt.

The article of the statute invoked by appellants under their first contention, Article 3716, R.C.S., 1925, prohibits the testimony of parties to legal actions by or against executors, administrators or guardians in which judgment may be rendered for or against them as such, as to any transactions with or statements by the testator, intestate, or ward unless called to testify thereto by the opposite party. A. V. McCarty, Sr., was a party to this action and he was not called by appellants to testify. A. V. McCarty, Jr., was, at the time, non compos mentis and his wife was his legally appointed guardian. The undisputed testimony was to the effect, however, that, while he had theretofore been interested in the subject matter of the suit, the witness had parted with it entirely and conveyed all interest he had ever owned in the property to his son, A. V. McCarty, Jr. All of the notes executed by McCarty, Sr., to the Temple Trust Company had either been paid or assumed and renewed by McCarty, Jr. The witness and his property had been entirely released from any obligation or liability thereon. While he joined as plaintiff in the suit, and appeared at the trial as a party plaintiff, yet he was only a nominal party and, in reality, had no personal interest in the subject matter or the outcome of the litigation. The rule is well established by our courts that one having no interest in common with the party calling him as a witness and having no interest in the result of the suit, although a nominal party to it, does not come within the purview of the statute. This contention of appellants is, therefore, overruled. Oury v. Saunders, 77 Tex. 278, 13 S.W.

1030; Commerce Farm Credit Co. v. Albritton, Tex.Com.App., 17 S.W.2d 784; Albritton v. Commerce Farm Credit Co., Tex.Civ.App., 9 S.W.2d 193. See, also, First State Bank & Trust Co. v. Walker, Tex.Civ.App., 187 S.W. 724; San Antonio Light Pub. Co. v. Moore, 46 Tex.Civ.App. 259, 101 S.W. 867; Williams v. Farmers' Nat'l. Bank, Tex.Civ.App., 201 S.W. 1083; International Order, etc., v. Fridia et al., Tex.Civ.App., 91 S.W.2d 404.

Nor do we agree with appellants in their second contention, that is, that neither the pleadings nor the evidence warrant the conclusion that McCarty, Jr., was the owner of the equitable title to lot No. 6 and that the legal title was held by McCarty, Sr., for his son. The evidence shows that, before taking up negotiations for the original loan, McCarty, Sr., and his son had been negotiating with the owners for the purchase of lots Nos. 6 and 7, lot No. 6 to be purchased by the son and lot No. 7 by McCarty, Sr. They desired to purchase the lots for the purpose of erecting a business building on each of them. McCarty, Jr., contemplated the erection on lot No. 6 of a two-story building with basement for the purpose of moving his stock of drugs into it and continuing the drug business in which he was, and for several years had been, engaged. McCarty, Sr., contemplated the erection upon lot No. 7, after he purchased it, of a one-story building to be rented to others for mercantile purposes. Not having sufficient money to finance the two enterprises, they applied to T. B. Duggan, the vice-president and agent at Lubbock of the Temple Trust Company, for two loans, one to McCarty, Sr., for $4000 to be secured by a deed of trust on lands in Lubbock County and used to finance construction of his building on lot No. 7; the other for the sum of approximately $8000 to McCarty, Jr., to be secured by a lien upon lot No. 6 and used to finance the construction of his two-story building on that lot. Their wishes, plans and desires were all explained to Duggan and he suggested that it would look better to the company and would be better all 'round to have both lots conveyed to McCarty, Sr., and the loan on lot No. 6 made to him instead of to his son on account of the fact that the father had property and a financial rating, while the son was lacking in that respect. It was shown the son paid the entire purchase price for lot No. 6 and

that it was conveyed by the former owner to A. V. McCarty, Sr. Furthermore, it is shown that it was suggested by Duggan and at least acquiesced in by both the McCartys that McCarty, Jr., would make the payments on the notes and interest and, when the first five notes were paid, aggregating $2500, McCarty, Sr., would then convey lot No. 6 to his son and a new loan advanced to the son by the Temple Trust Company to take up the balance of the orginial loan then remaining unpaid. These were the suggestions of Duggan and they were carried out in detail. Whether the arrangement should technically be designated an implied trust or an express trust is not important. It is conclusive that the conveyance of lot No. 6 to McCarty, Sr., was the result of the conversations had by the McCartys with Duggan and that they acted upon his suggestions and requirements. It is conclusive, also, that the equitable estate in that lot was separated from the legal title and that the relationship was created at the very time the title was acquired. All of the essentials of an express trust were present and, in our opinion, it cannot be seriously questioned that such a trust was the result. McCarty, Sr., therefore, held the title to lot No. 6 in trust for his son and appellants' contentions in this respect are overruled. McCamey v. Hollister Oil Co., Tex. Civ.App., 241 S.W. 689; Hollister v. McCamey, 115 Tex. 49, 274 S.W. 562; Clark v. Haney, 62 Tex. 511, 50 Am.Rep. 536; Wright v. Wright, Tex.Civ.App., 112 S.W. 2d 756.

The next contention made by appellants is that, there being no written contract under which McCarty, Jr., was obligated to pay the ten notes of the original loan, he cannot maintain an action for usury thereon because, under the law, such an action must be based upon a written contract which obligates the person bringing the suit to pay the debt. They assert that before a person can maintain a suit for usury, there must be a written contract binding him to pay usurious interest on the debt; and, further, that no one can maintain a suit for usury unless the holder of the indebtedness has a cause of action against such person for the debt. They urge that such contract must be a "two-edged sword, permitting the holder of the note to sue for the debt, and the person bound under written contract to pay the debt to set up usury as a defense." There is no question that, under the provisions of Sec. 18, Art. 5932, R.C.S., 1925, commonly known as the Negotiable Instruments Act, McCarty, Jr., was not legally liable to the Temple Trust Company upon the notes executed November 12, 1925, by McCarty, Sr. That statute provides that no person is liable on an instrument whose signature does not appear thereon and the signature of McCarty, Jr., did not appear upon any of the instruments executed in connection with the original loan. We are not in accord with appellants, however, in their assertion that the contract "must be a two-edged sword, permitting the holder of the note to sue for the debt, and the person bound under written contract to pay the debt to set up usury as a defense." The policy of the Legislature in enacting statutes prohibiting the collection of usurious interest is essentially the protection of borrowers against oppressive exactions of lenders. This contention of appellants is based upon the rule that such policy is not promoted if persons other than the victims of usury should have the benefit of the statute. The general rule is well established that the grounds of relief available to victims of usury are confined to the debtor or to one in legal privity with him. In further support of their contention in this respect appellants urge the distinction between the provisions of our Constitution, Article 16, Sec. 11, Vernon's Ann.St., and the provisions of the statute, Art. 5071. The constitutional provision is that all contracts for a greater rate of interest than 10 per cent per annum shall be deemed usurious and the duty is enjoined upon the Legislature to provide appropriate pains and penalties to prevent the same. In performing that duty the Legislature confined the pains and penalties to written contracts. We do not agree with appellants in their assertion that the victim of usury cannot maintain a cause of action for recovery of usurious interest paid under an oral contract. Roberts v. Coffin, 22 Tex.Civ.App. 127, 53 S.W. 597; Dunman et al. v. Harrison, Tex.Civ.App., 41 S.W. 499; Smiley v. Bank of Wyoming, 104 W.Va. 471, 140 S.E. 330; Faison v. Grandy et al., 128 N.C. 438, 38 S.E. 897, 83 Am.St.Rep. 693.

It will be noted that the constitutional provision above mentioned applies to all contracts, whether written or verbal, and provides that they shall be deemed usurious if they provide for a rate of interest greater than 10 per cent. per annum. In

the case of Roberts **v.** Coffin, supra, the written contract was not usurious, as it stipulated for interest only at the rate of 10 per cent. per annum. There was, however, a contemporaneous parole agreement to pay 18 per cent. instead of 10 per cent. as stipulated in the contract and the question before the court was whether or not such contemporaneous parole agreement made a usurious contract. The holding of the court was to the effect that it did, and that usurious interest paid under such parole agreement could be recovered by the party paying it. On account of the provision of the statute limiting recovery of usurious interest to written contracts, however, the court held that authority for the recovery of such usurious interest was relegated to the constitution which makes all contracts, whether written or oral, for a greater rate of interest than 10 per cent. unlawful, and the holding was to the effect that only the interest paid in excess of 10 per cent. could be recovered.

In the case of Dunman et al. v. Harrison, supra, Dunman had executed notes bearing interest at the rate of 12 per cent. per annum, the highest rate of interest permitted under the law at that time, and had further agreed orally to pay an additional sum of one-fourth of 1 per cent. on all that he owed Harrison. The trial court, upon sufficient evidence, found that this oral provision was for extra interest. The question before the court was whether the contract so made, including the oral feature, was usurious. The court held that the contract was a unit, though not all expressed in the written instrument, and that it should be treated as a violation of the usury statute.

We have not been cited to any case which holds with appellants in the assertion that usurious interest cannot be recovered when paid under an oral contract. On the contrary, it would seem the opposite rule has been established by our own courts; that is, that usurious interest may be recovered when so paid.

■ Under the holding in the Roberts v. Coffin case, supra, it may seem logical to assert that if appellees, McCarty, Jr., and his wife, have paid usurious interest on the original notes and deed of trust executed by McCarty, Sr., and if they are permitted to recover any of it, they are at most entitled to recover only the excess which they paid over and above 10 per cent. per annum. The basis of such a conclusion would be the assertion of appellants that, if any usurious interest were paid, it was paid under an oral contract to the effect that, at the time the loan was procured, McCarty, Jr., orally agreed with T. B. Duggan that the debt should be his and not that of his father who executed the notes and deed of trust. If such an analogy were correct, then under the holding in the Roberts case, they would be entitled to recover only the amount which they had paid, if any, in excess of 10 per cent. per annum because they must recover it, if at all, under the provisions of the constitution and not under those of the statute. In this respect, however, the case before us is not identical with the facts in the Roberts case. In each of the cited cases the contract to pay the excess interest was verbal. No question was raised as to the identity of the person who was to pay it. The only contract to pay usurious interest in those cases was in parole and in each case the written contract, considered alone, was not usurious. In the case before us the entire contract, in so far as the loan was concerned and the interest to be charged thereon, was in writing. If it were usurious, it was so by virtue of the written contract and, therefore, if any recovery may be had for usurious interest paid, the amount of it and the provisions relating to it do not depend upon any oral contract or agreement but upon the notes and deed of trust, all of which were in writing. If recoverable, therefore, it is under the statute and not confined to the provisions of the constitution.

■ As to the contentions of appellants with respect to the necessity of mutuality of liability in which they assert that the contract must be a "two-edged sword", permitting both the holder of the note to sue for the debt and the person bound under written contract to pay the debt, to set up usury as a defense, it must be conceded that, under the provisions of Sec. 18, Art. 5932, providing that no person is liable upon an instrument whose signature does not appear thereon, the Temple Trust Company could not have maintained a cause of action against McCarty, Jr., upon the notes executed by his father on November 12, 1925. Appellants have cited us to no case wherein any court has held with them in this contention and the rather extensive investigation we have made has failed to reveal any such rule of law. The

question here is whether or not, under the arrangement made at the time the loan was advanced, McCarty, Jr., is entitled to have credited upon the principal of his notes all amounts paid by him as interest on the entire transaction. We can conceive of no reason why the law should arbitrarily confine such a right of recovery to contracts containing mutual rights and liabilities. The very purpose of the usury law is protection of borrowers against oppressive requirements of those who have money to lend. If appellants are correct in their contention, then there is nothing to prevent lenders from requiring of distressed applicants for loans that they convey the contemplated security to a third person to whom the loan shall be made with the understanding that such third person shall afterwards reconvey the property encumbered with the loan and thus blandly evade not only the provisions of the usury law as expressed in both the constitution and the statute, but also the very policy and purpose of that law as well. The facts in this case show that McCarty, Jr., contemplated purchasing lot No. 6 and had negotiated with the owner for its purchase. He desired to build thereon a two-story business building, to be occupied and used by him in conducting his drug business. His father contemplated the purchase of the adjoining lot and the erection upon it of another building. They applied to Duggan as vice-president and agent of the Temple Trust Company for two loans, one of which was on behalf of McCarty, Jr., for approximately $8000, to be used in the erection of a two-story building on lot No. 6. In the conversations with Duggan, and at his suggestion, the lot was conveyed to McCarty, Sr., and the loan on behalf of his son was advanced to the son through McCarty, Sr. It was understood by all of the parties that the lot and two-story building would belong to McCarty, Jr., and that the loan was advanced for his benefit. It was discussed and agreed at the time that when McCarty, Jr., had paid $2500, consisting of the first five notes of the series, the adjoining lot belonging to McCarty, Sr., would then be released, the two-story building and lot No. 6 conveyed by him to his son, and a new loan advanced to McCarty, Jr., to take up the balance of $6300, which would then remain unpaid on the series of notes. The record shows that all payments made on the loan were made by McCarty, Jr.; that he occupied the building with his drug business and that all

of the parties understood from the beginning that, in reality, the property belonged to McCarty, Jr., and the loan was, in reality, advanced to him. Whether or not under these circumstances McCarty, Jr., having paid usurious interest on the loan, is entitled to maintain a suit for the recovery thereof, has not been before the courts of this state as far as we know. The direct question has been passed upon, however, by the Supreme Courts of at least two other states in opinions which we consider sound enunciations of the law pertaining to such a transaction. In the case of Smiley v. Bank of Wyoming, 104 W.Va. 471, 140 S.E. 330, 333, Smiley was a heavy borrower from the bank. He desired an additional loan of $12,000. In order to prevent a showing upon the books of the bank that such a loan would be in excess of what the bank was permitted to advance to him, the officials of the bank suggested that he convey the contemplated security to one Toler. After this was done the loan was made to Toler. Smiley recovered judgment against the bank for usurious interest which he had paid on the note. The point raised against usury was, as here, that the plea of usury is personal and can be made only by the person to whom the loan was made, and not by a stranger. This general policy of the law was affirmed by the court to be well established; but the court held that the debtor was Smiley, not Toler. The opinion states that "Everybody so understood that Smiley was the borrower. He paid the discounts, had the notes renewed, and they were paid off directly or indirectly by him. * * * Smiley was the borrower from the bank; whether directly or indirectly is immaterial. He was entitled to set up and recover the usury exacted from him."

In the case of Faison v. Grandy, 128 N. C. 438, 38 S.E. 897, 83 Am.St.Rep. 693, the Supreme Court of North Carolina had before it a state of facts almost identical with those in the instant case and in the Smiley case. In answer to the contention that the plea of usury is personal and can be interposed only by the maker of the note, the court held that it is a well established rule that the defense of usury is personal to the debtor or borrower and his privies by law or contract, citing Webb on Usury, par. 365. In the course of the opinion it is said; however, that such defense is personal in the sense that it is to the exclusion of strangers or parties disconnected from the immediate transaction. It is

limited to the borrower or debtor upon whom the burden falls, whether he be the maker of the note or not, or otherwise has an interest in the transaction which can be injuriously affected by the usury.

We are not willing to hold with appellants in their contention on this question. To do so would, in our judgment, effectively destroy the force of our constitutional and statutory provisions against usury and open a gap through which lenders of money could, by the simple expedient of requiring a transfer of the security to a third person through whom the loan should be advanced to the borrower, impose upon borrowers every oppression, hardship and injustice that our usury laws are designed to prevent. In this case McCarty, Jr., was, in fact, the borrower. The money was advanced to him, not to his father. McCarty, Jr., made all payments on the principal and interest. It was not contemplated that any of it should be repaid by McCarty, Sr. In accordance with the contract, when McCarty, Jr., paid the first five notes, McCarty, Sr., conveyed the security to him, a new loan was advanced to him, and McCarty, Sr., and his property were released. Under these circumstances, we think, if McCarty, Jr., paid usurious interest he is entitled to recover it or have it credited upon the principal of the debt in the same manner as he would have been if the original papers had been signed and executed by him.

The next question which presents itself is whether or not the contract was usurious. It was first contemplated by the McCartys that the loan to McCarty, Jr., should be for approximately $8000. In discussing the matter with Duggan they so informed him. Duggan agreed to make the loan but informed the applicants the notes would be in the aggregate sum of $8800, and that 10 per cent would be deducted from the face of the notes. A mechanic's lien and builder's contract was prepared by Duggan which provided for a note to be executed to a building contractor by McCarty, Sr., for $8800, payable on or before December 1, 1925. This note was executed and assigned by the purported building contractor to the Temple Trust Company. On November 12, 1925, the loan papers were executed, including the series of notes aggregating the sum of $8800. The sum of only $7920 was advanced to McCarty on the loan, which was 10 per cent less than the aggregate amount provided by the series of notes. The notes provided for interest from date at the rate of 7 per cent per annum, the interest payable semi-annually, and the deed of trust contained an acceleration clause in which it was provided that, in case of default in the performance of any of the covenants or agreements contained therein, the trustee should have power, after due notice, to sell the security and apply the proceeds to the payment of the notes, together with all accrued interest thereon. Unless it is relieved under other provisions of the acceleration clause which we shall discuss later, these provisions authorized the sale of the property at the end of the first six-month period in default of the payment of the interest then accrued and again at the end of the first twelve months under the same condition. If default had been made in the payment of the interest when due, the trustee was authorized to sell the security and, from the proceeds of such sale, pay the principal provided in the notes of $8800 and any interest that may have accrued thereon up to the time of the sale at the rate of 7 per cent per annum. If default had been made at the end of the first year and the provisions of the deed of trust had been followed in that respect, the Temple Trust Company would have collected, in addition to the $7920 advanced by it, the $880 discounted from the face of the notes and 7 per cent interest on the $8800 aggregating $1496, interest, which would have been far in excess of 10 per cent per annum. Unless relieved by other provisions of the acceleration clause, therefore, the transaction was highly usurious.

From what we have said, it is obvious we do not agree with appellants in their assertions under the third contention made by them and their assignments of error in respect thereto are overruled. Adleson v. B. F. Dittmar Co., 124 Tex. 564, 80 S.W. 2d 939; Webb on Usury, p. 178.

Under their fourth contention appellants assert that the acceleration clause contained in the deed of trust is such as to limit collection by them, in case of premature default and accelerated maturity to no more than 10 per cent upon the amount of money advanced to appellees up to the time of such default. The deed of trust in this case is identical with the one involved in the case of Temple Trust Company v. Haney, Tex.Civ.App., 103 S.W.2d 1035, save only as to the dates, amounts and

dates of maturity of the notes. The acceleration clause is identical with the one quoted by Justice Baugh in the opinion in the cited case. In that case the Court of Civil Appeals held against appellants' contention in this case and the Supreme Court, in a memorandum opinion, affirmed the Court of Civil Appeals and approved its holding. 107 S.W.2d 368. A motion for rehearing was overruled by the Supreme Court but later, upon its own motion, the order overruling the motion for rehearing was set aside and the case again considered by the Supreme Court with the result that the holding of the Court of Civil Appeals was again affirmed and the motion for rehearing overruled. 126 S.W.2d 950. Inasmuch as the acceleration clause in the deed of trust before us is identical with the one involved in the Haney case, and the Supreme Court, as well as the Austin Court of Civil Appeals, has held that it does not relieve the transaction of the usury provisions which it obviously contains, we do not deem it necessary here to enter into a further discussion of that phase of appellants' contentions.

In this connection, however, appellants make the further contention that the notes and deed of trust here involved were executed for the purpose of taking up and extending the payment of the mechanic's lien note and contract which had been executed by McCarty, Sr., to McDaniel covering the labor and material necessary to erect the building. They contend that the purchase by the Temple Trust Company of the mechanic's note and lien was a bona fide purchase and that it was purchasing the note at a discount of 10 per cent. We cannot accede to this contention. As we have stated, the note and mechanic's lien were prepared by Duggan, the agent and vice-president of the Temple Trust Company, and its execution and assignment were merely component parts of the entire transaction. Moreover, the proceeds of the loan were not paid to McDaniel but the larger part of it was paid to a bank and to business concerns from whom material evidently had been purchased to construct the building. After these payments were made the balance was remitted to A. V. McCarty. The final remittance was accompanied by a letter from the Temple Trust Company to McCarty, dated February 12, 1926, in which it was stated that the Temple Trust Company had on that day made settlement in the loan as follows: "Net amount of the loan $7920.00. Paid out to: Acme Brick Company, $1650.77; Citizens National Bank $2000.00; Lydick Roofing Co. $577.70; Ben Sibbitt Iron & Foundry Company $573.78; A. V. McCarty $3117.25— $7920.00. We hand you herewith check for $3117.25, balance left after paying the bills we held in this office against your building."

The record shows that, at all times, every one connected with the transaction considered it as a loan in the sum of $7920 to A. V. McCarty, Jr., through his father, and the note and materialman's lien were merely incidental to the loan. Ingram et al. v. Temple Trust Co. et al., Tex.Civ. App., 108 S.W.2d 306; Glenn v. Ingram, Tex.Sup., 126 S.W.2d 951; Temple Trust Co. v. Powers, Tex.Civ.App., 107 S.W.2d 734; Id., Tex.Sup., 126 S.W.2d 947; Temple Trust Co. et al. v. Moore, Tex.Civ.App., 107 S.W.2d 736; Id., Tex.Sup., 126 S.W. 2d 949; Temple Trust Co. et al. v. Sewell et ux., Tex.Civ.App., 108 S.W.2d 279; Id., Sup., 126 S.W.2d 943.

Under the fifth and last contention made by appellants they assert, in substance, that the assumption in the correction deed of the balance due upon the debt and lien created by the deed of trust and notes of November 12, 1925, by A. V. McCarty, Jr., estopped him from pleading usury upon the debt assumed. If the deed and assumption of the indebtedness had been a bona fide transaction and A. V. McCarty, Jr., in reality had purchased the property and as part of the consideration therefor assumed the balance due upon the indebtedness, there may have been some merit in this contention. As we have shown, however, the deed of McCarty, Sr., conveying the property to his son and the assumption by the son of the balance of $6300 then unpaid on the indebtedness were merely elements of procedure adopted by the parties, at the suggestion of T. B. Duggan, the agent, to consummate the loan transaction. This procedure was suggested by Duggan in the conversations had between him and the McCartys before the original notes and deed of trust were executed and the execution and delivery of the deed of conveyance were merely parts of the same transaction. Under these circumstances, appellees were not estopped from pleading usury and there is no merit in this contention.

We have carefully considered all of the assignments of error and propositions presented by appellants and, in our opinion, no merit is shown by any of them. They are, therefore, overruled and the judgment of the court below will be affirmed.